# GOLDBERG RIMBERG & WEG PLLC

115 Broadway, Suite 302
New York, New York 10006
Tel: 212-697-3250
Fax: 212-227-4533

December 20, 2016

**Via ECF:**
Hon. Vernon S. Broderick
United States District Court, S.D.N.Y.
40 Foley Square, Room 415
New York, NY 10007

      Re:    *Martell Strategic Funding, LLC v. American Hospitality Academy et al.*,
             No. 1:12-cv-0627

Dear Judge Broderick:

      We represent the plaintiff, Martell Strategic Funding LLC ("MSF"). We write in response to Defendants American Hospitality Academy and Cindi Reiman's ("Defendants") letter requesting a pre-motion conference to file a motion for summary judgment (ECF No. 211). As discussed below, Defendants' positions are meritless, and their motion for summary judgment would be a complete waste of the parties' and the Court's time and resources.

**Relevant Background**

      As detailed in the Amended Complaint, Defendants improperly repudiated four separate agreements between MSF and Defendants. This action was brought to seek redress for, *inter alia*, Defendants' blatant disregard of those agreements. For example, defendant Reiman sent an email to Linda Li of TrainingBeam Education Services, Ltd., stating, "You two are the key players now in Michael [Milea of MSF] and my lawsuit as I am now suing him to get him out of AHA China. I don't have a problem paying him some type of 'brokers fee' but to pretend he is doing anything for either of us and receiving 50% of that for the next 10 years is impossible for me." Amended Complaint, ¶ 76. This email conclusively shows Defendants' express intent to breach their deals with MSF and cut MSF out of transactions which MSF was responsible for originating. Moreover, Defendants intentionally breached two other agreements between the parties, both of which concern business in China.

**Defendants' Proposed Summary Judgment Motion is Meritless**

      Unable to deny that Defendants have in fact breached these agreements, Defendants have asked this Court to allow for the filing of a summary judgment motion on the frivolous bases that one of these four agreements was purportedly unconscionable, and that MSF cannot prove damages.

### A. Defendants' Unconscionability Argument Fails

First, Defendants assert that the MSF/AHA Agreement is unconscionable and unenforceable. However, Defendants failed to raise unconscionability as an affirmative defense to MSF's breach of contract claims and thus have waived that defense. *See Tokio Marine v. Macready*, 803 F. Supp. 2d 193, 199 (E.D.N.Y. 2011) (holding that unconscionability defense was waived because it was not brought as an affirmative defense in the defendant's answer). For this reason alone, Defendants' unconscionability defense has no chance of success.

Moreover, even had they not waived this affirmative defense, Defendants cannot show that the contracts were unconscionable as a matter of law. First, Defendants assert that the contract clause requiring AHA to pay 50% of gross revenues is commercially untenable, especially for a "startup." This is a factual distortion. AHA, which Reiman owned for 30 years, was hardly a startup in 2011. (*See* Reiman Tr. 6:19-21). Moreover, the agreement does not provide that MSF is to be paid 50% of the gross revenue generated pursuant to that agreement, but rather "less Authorized Expenses," *i.e.*, 50% of the total gross revenue minus Authorized Expenses.

More importantly, Defendants' argument that "there was a manifest disparity of the relative bargaining power and experience of the parties" is similarly fiction. Reiman has owned AHA since 1986 and she had approximately 25 years' worth of experience at the time she signed this Agreement. (Reiman Tr. 6:19-21, 8:2-4.) She was not simply an unsophisticated, inexperienced party with no bargaining power who would sign anything put in front of her. Indeed, Reiman herself testified that Milea previously presented her with a draft letter of intent in 2009 which she turned down because she felt it was "very unfair [and] very one-sided." (Reiman Tr. 63:9-17.) Notably, Defendants' misleading quote that Reiman felt "out of my league" referred to her lack of experience in having investors raise money for her, not her ability to review contracts. (Reiman Tr. 62:6-21.) Significantly, the single case cited by Defendants in their entire letter, *Doctor's Assocs. v. Jabush*, 89 F.3d 109, 113 (2d Cir. 1996), which is directly on point here, found that the contract at issue was *not unconscionable*. Specifically, the Court found that "[a]s purchasers of a … franchise, the Spearses '[were] not vulnerable consumers or helpless workers. They [were] business people who bought a franchise.' … We simply cannot conclude that, in deciding to purchase their franchise, the Spearses were 'forced to swallow unpalatable terms.'" *Id*. Here too, Reiman was a sophisticated long-time owner of AHA at the time of contracting – she was not a vulnerable consumer, helpless worker, or otherwise defenseless victim of a strong-arm contract.

Finally, Defendants also contend that based on Milea's advice, Reiman and AHA did not retain separate counsel and they relied solely on MSF's lawyers. But Milea testified that to his knowledge, Reiman had her own counsel representing her with respect to the agreements. (Milea Tr. 78:2-6, 120:3-18.) Milea's comment that he "had taken the laboring oar" merely meant that Milea had asked MSF's lawyer to draft the agreement, not that Reiman and AHA could not have their own counsel review and negotiate it. (*Id*. 76:19-77:12.) Whether or not Reiman ultimately decided to retain her own attorney or to rely on MSF's, Reiman does not claim – nor can she – that she was somehow compelled to rely on MSF and could not retain counsel of her own choosing to review and negotiate on her behalf.

### B. Defendants' Damages Argument Fails

Defendants' second argument that MSF will not be able to prove damages at trial is contradicted by significant evidence that MSF suffered significant damages from Defendants' breach. First, Reiman herself admitted that she provided to MSF a pro-forma and business plan concerning their agreements. (Reiman Tr. 106:23-107:5.) MSF intends to prove contract damages using, *inter alia*, these pro-formas and business plans. *See Samson Lift Techs., LLC v. Jerr-Dan Corp.*, 139 A.D.3d 534, 536, 33 N.Y.S.3d 168, 169 (1st Dep't 2016) (denying summary judgment where the "record establishe[d] that the issue of future sales was not only contemplated by the parties in the amended license agreement, but was fully considered, analyzed, and negotiated by sophisticated business professionals during their extended contract negotiations.") (citations omitted). Moreover, so long as "plaintiff can 'demonstrate a genuine issue of fact as to the existence of actual damages resulting from the breach of contract, then summary judgment ... is inappropriate even if the precise amount or extent of the damages is still somewhat uncertain.'" *Dart Mech. Corp. v. Johnson Controls, Inc.*, 2015 WL 9050384, at *5 (E.D.N.Y. Dec. 15, 2015).

### Conclusion

For the reasons set forth above, it is respectfully requested that the Court decline to entertain Defendants' proposed summary judgment motion.

    Respectfully submitted,

    /s/ Robert L. Rimberg
    Robert L. Rimberg

cc: All Counsel (*via ECF*)